8679

### HILLER .v. BANK OF COLUMBIA.

1. PLEADINGS—BANKS.—Where a bank charges checks drawn on one account to another and it desires to show that both accounts were the individual funds of the depositor, and to insist that it be allowed to set off the checks against the account to which they were charged, it must plead such defense.

2. CHARGE—BANKS.—There being no proof that any fiduciary funds were included in deposit to the credit of one as "admx." it was error to admit in evidence the will of depositor's husband, and this Court, not being satisfied the trial Court clearly instructed the jury not to consider this evidence and because of his refusal to give appellant's request on the point, the error is held prejudicial.

3. IBID.—Stating admitted or undisputed fact is not a charge on the facts, but in this case the instruction "if A was authorized to draw on this account and drew on that, he did what he had no right to do and if the bank paid the check it did what it had no right to do" is on the facts, as one of the issues in the case was that the depositor had authorized A to draw on both accounts and had acquiesced in his doing so.

4. IBID.—APPEAL.—Where appellants' attorney sits by and hears the Judge misstate the issues and does not call his attention to it he cannot afterwards except to it on appeal.

5. IBID.—But when he withdraws from the jury one of the issues in the case by narrowing them and by so stating them as to state a fact at issue, he charges on the facts.

6. IBID.—PRINCIPAL AND AGENT.—When the Court gives the general rule that when one deposits money in a bank it is the duty of the bank to show it has been properly paid out, it is the duty of appellant to request that when general authority to draw checks is shown in an agent of depositor, it is the duty of depositor to show any limitation of that authority and notice thereof if he relies on that.

Before GAGE, J., Richland, December, 1912.　　Reversed.

Action by Nannie E. Hiller against Bank of Columbia. Defendant appeals.

*Mr. D. W. Robinson,* for appellant, cites: *Former adjudication the law of the case:* 84 S. C. 196. *Charging on the*

*facts:* 47 S. C. 523; 57 S. C. 461; 91 S. C. 217; 56 S. C. 531; 68 S. C. 161; 76 S. C. 63; 50 S. C. 168; 49 S. C. 496. *Authority of agent:* 47 S. C. 147; 26 S. C. 87; 92 S. C. 43; 23 L. R. A. (N. S.) 444. *Burden of proof:* 92 S. C. 42; 47 S. C. 147. *Bank has right to apply deposits to extinguishment of depositor's debts:* 3 Ency. 835; 69 S. C. 383; 1 Morse on Banks, sec. 324-37; 4 Ded. 524; 59 C. C. A. 427; 6 Cent. Dig. 1244, 1194; 192 U. S. 145; 111 U. S. 125. *Debts in same right:* 1 Morse on Banking 334; 104 U. S. 554; 26 S. C. 548. *"Admx." mere description of the person:* 2 Moore on Banks, sec. 604; 17 Am. St. R. 779; 10 L. R. A. (N. S.) 707; Croswell on Exors. and Admrs., sec. 196d; 126 Mass. 119.

*Mr. Frank G. Tompkins*, contra.

October 28, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. A short time after her husband's death, in 1904, plaintiff collected a policy of insurance on his life, which was payable to her, in her own right, and deposited the money in the defendant bank to her credit as "Nannie E. Hiller, adm'x." Her husband left a will, of which she was executrix, and, after his death, she continued a mercantile business in which he had been engaged, though she was not authorized to do so by the will. Her brother-in-law, John G. Hiller, was her agent in the management of the business. He made deposits to her credit on her said account at bank, and, in doing so, signed her name in the endorsement of checks payable to her order, and signed her name to checks on said account. She also drew checks on said account. She testified that, at first, she drew all the checks herself, but later she gave him authority to sign her name to checks. She also said that, in signing her name, he tried to imitate her signature, and the testimony showed that

it was difficult for even an expert in handwriting to distinguish them.

On April 19, 1910, plaintiff deposited $200 in the defendant bank to her credit as "Nannie E. Hiller," without "adm'x" added. Sometime in June thereafter, a number of checks were presented at the bank, signed "Nannie E. Hiller, adm'x," payment of which would have overdrawn that account. The bank was about to return them unpaid, when John G. Hiller happened to go into the bank, and, on his attention having been called to the matter, he directed the bank to charge them to Mrs. Hiller's personal account, saying that it was all hers—her business. This was done, and the amount to plaintiff's credit was thereby exhausted, except thirteen cents, about which there is no controversy.

The bank having refused, on demand, to pay Mrs. Hiller the $200 so deposited by her, she brought this action to recover said sum. The defense was that the money had been paid out on checks drawn by her, or her authorized agent. The defendant attempted to show that the checks which had been charged to her personal account were signed by the plaintiff herself, and the evidence was conflicting as to whether she or John G. Hiller signed them. She admitted that she signed one for $55.20, which paid for a bale of cotton bought at the store, but denied signing the others. The one she admitted signing did not have "adm'x" after her signature. The others did. A number of handwriting experts testified that, in their opinion, she signed most if not all, of them.

The bank contended, further, that the course of dealing between it and plaintiff and John G. Hiller, with the knowledge and acquiescence of plaintiff, had been such that it was justified in obeying his directions to charge the checks to her personal account. In support of that contention, besides the other testimony showing the general course of dealing, it introduced testimony to the effect that, on a former occasion,

Rep.]                    April Term, 1913.

plaintiff had two accounts at the bank, and John G. Hiller was allowed to draw checks on both.

Defendant also sought to show that the "adm'x" checks, which had been charged to plaintiff's personal account, were drawn to pay her own debts, for the purpose of asking that, as both funds were held by her in her own right, it be allowed to set off said checks against the amount to her credit on the personal account. The Court excluded the testimony, and ruled out the defense, on the ground that it had not been pleaded in the answer. In this connection, we may dispose of the exceptions based upon that ruling.

On the first appeal (92 S. C. 445), this Court said with regard to that defense: "To avoid misunderstanding, we refer to another point not properly made by the appeal. When the depositor has not assigned his demand against the bank by check or otherwise, the right of the depositor to demand his balance is subject to the right of the bank to set off against the balance any debt due by him to the bank; and this right of the bank extends to a demand of the bank for money paid out on the depositor's debts without his authority, if the depositor subsequently ratifies the payment by adopting it for his own benefit. *Lowrance* v. *Robertson,* 10 S. C. 8; 27 Cyc. 838; *Crumlish's Admin.,* v. *Central Imp. Co. et al.,* 38 W. Va. 390, 45 Am. St. R. 872, 23 L. R. A. 120, note. But the burden would be on the bank of properly pleading and proving such defense. This subject is referred to in the exceptions, but the defense was not alleged in the answer, nor was evidence on the point offered." Notwithstanding the plain declaration of the Court that the defense had not been pleaded, and that it could not avail defendant, unless pleaded, no effort appears to have been made to obtain leave to plead it. Therefore, there was no error in excluding the evidence offered to prove it.

Previous to the first trial, the defendant had set up in its answer the defense that plaintiff had mingled her own funds

with those of her husband's estate in her account at the bank, and had drawn them out from time to time. On plaintiff's motion, this defense and all the allegations of the answer relative to the will of plaintiff's husband and his estate, and the mingling of the funds thereof with plaintiff's own funds were stricken out; and, on the former appeal, it was held that there was no reversible error in striking out those allegations, because the undisputed evidence made only one issue, to wit: whether the money deposited by plaintiff, which, according to the undisputed evidence, was her own, had been drawn out by her or by her authorized agent, and that that issue was raised by the allegation of the answer that it had been so drawn out.

Notwithstanding this ruling, on the second trial in the Court below, the plaintiff was allowed, against the objection of the defendant, to introduce her husband's will, and her attorney was allowed to argue therefrom to the jury that she had two funds in the bank—one of her husband's estate and one of her own; and the Court refused to charge defendant's request that the will was not material to the issues in the case, and that it gave plaintiff no authority to carry on the mercantile business for five years after her husband's death.

The will was improperly admitted, because, on the second trial as on the first, the undisputed evidence was that the money deposited in both accounts belonged to plaintiff in her own right. Therefore, the admission of the will could only confuse the issue. It might have been held that the error in admitting it was cured by the charge, because the Court correctly concluded and held that there was no testimony that any estate money was deposited in the "adm'x" account, if it were clear that the jury understood that holding as an instruction to them. But, in the beginning of what is set out in the record as the charge, his Honor said: "What I shall say in the beginning is not so much for the jury as it is for the benefit of counsel in the case, in the event I err in saying

it." Upon consideration of his Honor's subsequent remarks on the subject, it is by no means clear that he intended any of them as instructions to the jury, or that the jury would have been warranted in accepting and acting upon them as such. And it was not until he came to the point in his remarks where he said that he thought it was his duty to submit only one question to the jury that we can say with certainty that he was addressing his remarks to the jury. We have often held that the admission of testimony which is merely irrelevant will not be ground for the reversal of a judgment, unless it is made to appear that it was prejudicial; and we are loath to disturb a judgment upon such grounds. But, under the circumstances above stated, we are not prepared to say that the error was not prejudicial,— especially as the Court refused to charge defendant's request with regard to the relevancy of the will and the absence of authority therein to plaintiff to continue the mercantile business after her husband's death.

We do not agree with appellant that his Honor charged on the facts, when he said to the jury: "And she says she opened one on this side, called individual account; she would have had the right to say to John G. Hiller; You may check on this administratrix account. You may draw checks on it and sign my name to them, and the bank is authorized to pay these checks; but you cannot sign checks on this individual account. I alone shall draw checks on that. If she did that, she did what she had the right to do." The facts stated were all admitted or undisputed, and we have frequently held that the trial Judge does not violate the inhibition against charging on the facts, when he states admitted or undisputed facts as a basis of applying the law. It would sound absurd, even to an intelligent layman, to hear a trial Judge stating hypothetically, in his charge to the jury, facts which are admitted or undisputed. In prohibiting Judges from charging on the facts and from stating the testimony, the purpose of the lawmakers was to prevent the

Judge from becoming a participant, directly or indirectly, in the decision of disputed issues of fact. But, we think his Honor erred, when he further said, in the same connection, "and if John G. Hiller was authorized to draw on this account, and instead he drew on that account, he did what he had no right to do, and if the bank paid the checks, they did what they had no right to do." The last sentence of this instruction eliminated from the consideration of the jury the contention of the bank that the course of dealing between the parties had been such as to justify the conclusion that Hiller was acting within the scope of his authority, when he directed the checks in question charged to plaintiff's personal account. It also withdrew from their consideration the knowledge or lack of knowledge of the bank of the limitation of the authority of Hiller to draw checks on only one account, which, in view of the testimony of the previous course of dealing, was an important element in determining whether the bank's defense should be sustained.

The rule is that the principal is responsible for the acts of his agent done within the scope of his authority, real or apparent. An agent is clothed in law with all the authority which his principal holds him out as having, or knowingly allows him to hold himself out as having. Therefore, if the plaintiff, by her course of dealing with the bank, through Hiller, held him out as having the authority which he exercised, or knowingly allowed him to exercise such authority and acquiesced in it, and if the circumstances were such that a reasonably prudent person would have concluded therefrom that he had such authority, the bank was justified in obeying his directions, and its defense should be sustained. *Welch* v. *Clifton,* 55 S. C. 568; *Blowers* v. *Ry.,* 74 S. C. 221; 31 Cyc. 1331-5. The testimony,—especially that which tended to show that, on a previous occasion, two accounts had been kept, and Hiller drew on both, with the knowledge and acquiescence of plaintiff,—made an issue of fact, whether the bank was justified in its course, and the Court

invaded the province of the jury in charging that it had no right to do what it did, under the facts stated in the hypothesis. *Buist Co.* v. *Mercantile Co.,* 73 S. C. 48.

The Court erred in stating the bank's contention to the jury, saying: "The bank contends that these ten checks (the 'adm'x' checks which had been charged to plaintiff's personal account) were on this account called individual account, not to be drawn on by John G. Hiller at all, but by Nannie E. Hiller." The bank's contention was not that said checks were drawn on the personal account, but that, notwithstanding they were drawn on the "adm'x" account, they were drawn by Mrs. Hiller herself, and as there was not enough money to her credit in that account to pay them, she must be held to have intended that they should be paid out of the other account. With one exception, the checks showed on their face that they were drawn on the "adm'x" account. The bank further contended that it was within its rights in obeying Hiller's direction to charge the checks to plaintiff's personal account. This error would not, however, be ground for reversal of the judgment, because it was the duty of defendant's attorney to pay attention to the charge and to call attention of the Court to the error in stating his contentions. We have frequently held that, if counsel sit by and allow the Court to misstate the issues or their contentions, without calling attention to it and asking that it be corrected, they will not be allowed to take advantage of it on appeal.

But the instruction was further erroneous, in that it involved a charge on the facts, in so far as the Court said of the individual account, that it was "not to be drawn (on) by John G. Hiller at all, but by Nannie E. Hiller." Whether John G. Hiller had authority to draw on that account was, as we have seen, an issue of fact which was exclusively for the jury.

We think, also, that his Honor narrowed the issue too much, when he told the jury that the bank must prove that

"the ten checks in issue drawn upon it (the individual account) were drawn rightly, to wit: drawn by Nannie E. Hiller." This instruction left out of view this very material feature of the defense that, even if the checks were drawn by John G. Hiller, still, if he had authority, real or apparent, to direct the bank to charge them to Mrs. Hiller's personal account, the bank had the right to do so. His authority to draw the checks on the "adm'x" account was admitted, and they were so drawn, so that the question whether the plaintiff drew those checks herself was not the sole question at issue, nor was a finding that she did not draw them herself conclusive of the bank's defense.

Appellant contends that his Honor erred in charging that, when plaintiff proved that she put the money in the bank, the burden was upon the bank to show that it was rightly paid out. As a general proposition, that was a correct statement of the law, and, from the context, it appears that the Court had in mind only the general rule in such cases. It is true, as contended by appellant, that, when a general agency is shown, the burden is upon the principal who would escape liability for the acts of his agent done within the apparent scope of the agency, on the ground that the agent's authority was limited, to prove the limitation and notice thereof to the other party. *Whaley* v. *Duncan,* 47 S. C. 147; *Lowry* v. *R. Co.,* 92 S. C. 43; 31 Cyc. 1644. But, as the principle for which appellant contends arose out of a special phase of the case, it should have been brought to the attention of the Court by a request to charge.

Judgment reversed.

MR. JUSTICE WATTS *was absent at the hearing and did not participate in the decision of this case.*