**W. C. SANDIFER, Administrator of the Estate of Thomas J. Moore, deceased, Plaintiff,**

v.

**Harold R. SALE, Defendant (two cases).**

**Civ. A. Nos. 571, 572.**

United States District Court
E. D. South Carolina,
Columbia Division.

Aug. 25, 1961.

J. D. Carroll, H. V. Sandifer, George Bell Timmerman, Jr., Lexington, S. C., for plaintiff.

R. Milo Smith, Lexington, S. C., David W. Robinson, J. Means McFadden, Columbia, S. C., for defendant.

WYCHE, District Judge (sitting by designation).

In the above cases the plaintiff brings an action for damages under the South Carolina Wrongful Death Statute (Section 10–1951, Code of Laws of South Carolina, 1952) for the benefit of the beneficiaries named in the statute; the other action is one for damages for pain and suffering of the decedent resulting from personal injuries he sustained in the collision of an automobile driven by the decedent and one driven by the defendant Harold R. Sale, for the benefit of the estate of the decedent, under the South Carolina Survival Statute (Section 10–209, Code of Laws of South Carolina, 1952).

In each action the defendant set up a counterclaim but during the course of the trial it was made to appear that the claims of the defendant against the estate of the decedent had previously been disposed of by settlement and the defendant consented to a dismissal of these counterclaims and judgment in favor of the plaintiff as to them.

The cases were consolidated for trial and tried before me without a jury.

I viewed the scene of the accident, with the consent of, and in the presence of, attorneys for the parties.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially, and state my conclusions

of law therefrom, in the above causes as follows:

### Findings of Fact

1. On August 6, 1954, at approximately 5:30 o'clock p. m., deceased Thomas J. Moore was driving his Ford automobile in an easterly direction on U. S. Highway No. 378 at a point approximately four and one-half miles east of the Town of Lexington, and was descending the hill which is immediately to the west of what is known as "Twelve-Mile Creek" and the bridge over it and the store on the north side of the highway operated by Moore. Following behind him was an automobile driven by Miss Eloise Corley. Both vehicles were traveling in the lane of traffic on their right, and the highway is a two-lane road at that point.

2. Approaching Twelve-Mile Creek and the store of Moore from the east at the same time, traveling in a westerly direction from Columbia, toward Lexington, was defendant driving his automobile with his son and wife as passengers. Defendant was driving in the lane of traffic on his right and was descending a straight hill which is almost a mile long.

3. The roadway on the hills east and west of Twelve-Mile Creek and the store of deceased is straight for a distance of about two miles, and the vehicles of deceased and defendant, approaching each other from opposite directions, from west and east, respectively, were clearly visible to the drivers of each, respectively, for a distance in excess of one mile.

4. The store operated by deceased had an oval apron or parking place immediately at its front, extending on either side of it for a short distance, and a private driveway ran along the west side to its rear. There is no road intersection here. The store is approximately 150 feet west of the bridge, on the north side of the highway.

5. As deceased descended the hill west of the store, followed by the second automobile driven by Miss Eloise Corley, he was driving about twenty-five miles per hour; and, some distance from the store, he put out his arm to signal a left turn across the roadway.

6. As deceased approached the store, descending the hill, he first moved as if to turn to his left across the highway, then pulled back to his right lane and continued a short distance. During this time he was signalling to indicate a left turn, and the automobile of Miss Corley was following behind him, with defendant approaching from deceased's front, in the north lane of travel.

7. Just prior to reaching the oval area in front of his store, deceased turned to his left across the roadway at an angle, and into the lane of traffic being used by defendant.

8. When deceased made this turn to his left across the highway, defendant immediately applied his brakes and turned to his right toward the outside of the pavement but could not avoid a collision, the right front of defendant's automobile striking the right front side of that of deceased at approximately its right front wheel.

9. The point of impact was four feet or less from the north edge of the pavement—the outer edge of the lane of traffic on defendant's right.

10. At the time of the collision, the automobile of Miss Corley following that of deceased was moving eastward about 30 feet behind it, traveling slowly in the south lane of traffic, which deceased had left when he turned left across the highway.

11. Defendant did not operate his automobile at a speed in excess of the limits permitted by law.

12. Defendant was in his proper lane of travel on the highway when the collision occurred.

13. Deceased turned left across the roadway in front of defendant's automobile when such turn could not be made with reasonable safety.

14. Whether or not defendant saw deceased's left turn signal, he could not reasonably be expected to anticipate that deceased would turn left in front of him when their automobiles were a short distance apart. Such signal, under the cir-

cumstances, would reasonably be regarded as an indication to those following behind deceased.

15. The evidence fails to establish any lack of care on the part of defendant; but, even assuming that he was negligent or careless in any particular, it conclusively establishes that deceased himself was careless and negligent, and that such acts on his part contributed to the collision in which he sustained injuries as a direct and proximate cause thereof.

16. There is no evidence of any wilful, wanton, malicious or reckless acts or delicts on the part of defendant.

17. Within an hour prior to the collision, deceased had taken "two to four" drinks of some alcoholic beverage.

18. Prior to August 6, 1954, deceased had been suffering from cirrhosis of the liver, hypertension and coronary artery disease. He was 62 years old at the time of his death on August 14, 1954.

19. Deceased sustained a ruptured spleen in the collision, necessitating an operation to remove it. The shock and the operation together with his physical condition, resulted in his death eight days after the collision.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of these actions.

■ 2. The rights and duties of the parties hereto are governed by the laws of the State of South Carolina, the place where the collision out of which these actions arose, occurred.

3. Section 46-405, Code of Laws of South Carolina, 1952, provides: "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon a roadway as required in sections 46-402 and 46-403 or turn a vehicle to enter a private road or roadway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

4. In discussing the doctrine of last clear chance as it obtains in South Carolina, the Supreme Court said: "The doctrine assumes that there was time after the plaintiff's negligence occurred in which the defendant could have prevented the collision." Durant v. Stuckey, 221 S.C. 342, 70 S.E.2d 473, 476.

■ 5. The Supreme Court of South Carolina, has defined contributory negligence as " 'such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, to make it a proximate cause of the injury complained of.' " Coleman v. Lurey, 199 S.C. 442, 20 S.E.2d 65, 66. And, the rule is clearly established in this State that " 'contributory negligence to any extent will always defeat a recovery.' " Gladden v. Southern Railway Company, 142 S.C. 492, 141 S.E. 90, 100 (and cases therein cited).

■ 6. It is difficult to see where the evidence has established any negligence on the part of the defendant; but, assuming that there was some negligence on his part in not decreasing his speed when deceased gave a left-turn signal, it is clear that deceased himself could have, or should have, seen defendant's automobile approaching, that he was guilty of negligence himself in turning left into the path of defendant's automobile when the latter was but a short distance from him and the turn could not be made with reasonable safety, and that such negligence on the part of deceased caused or contributed to his death as a direct and proximate cause thereof. Such contributory negligence precludes any recovery by plaintiff against defendant in these actions.

7. Deceased turned into the path of defendant's automobile when such movement could not be made with reasonable safety, thus creating a sudden emergency, to avoid the danger from which there was not reasonable time available to defendant. The negligent act of deceased in turning to his left across the roadway and the collision were almost simultaneous and defendant had done all he could to avoid the collision after the danger

became apparent. Had he attempted to turn to his left, he would have collided head-on with the automobile following that of the deceased, assuming that there was time for him so to turn.

8. Having decided that plaintiff is barred of any recovery against defendant in these actions by reason of the contributory negligence of the deceased, there is no reason to pass upon the other issues before me, and I express no opinion as to them.

For the foregoing reasons,

It Is Ordered, That judgment be and the same hereby is granted in favor of defendant Harold R. Sale in each of the above entitled actions.

As hereinabove stated, defendant has agreed that his counterclaim in each of these actions should be dismissed, and, therefore,

It Is Further Ordered, That plaintiff take nothing of defendant on his counterclaims in these actions and that such counterclaims be and they are hereby dismissed.