22203

PEE DEE PRODUCTION CREDIT ASSOCIATION, Respondent, v. James Derrick JOYE, Appellant.

(326 S. E. (2d) 650)

Supreme Court

*Richard G. Dusenbury, Cheryle Turner* and *Bernard D. Dusenbury,* Florence, *for respondent.*

*John M. Milling* of *Greer & Milling,* Darlington, *for appellant.*

Heard Oct. 1, 1984.

Decided Dec. 21, 1984.

GREGORY, Justice:

This is an action for a deficiency judgment. The appellant, James Derrick Joye, appeals from a jury verdict in the amount of Two Hundred Thirty Seven Thousand, Nine Hundred Twenty Two Dollars and 29/100 ($237,922.29). We affirm.

Initially, an action was brought by respondent against appellant and several other defendants for foreclosure of a mortgage securing a promissory note. Appellant was alleged an endorser of the note and the complaint sought deficiency judgments against all endorsers if the mortgaged assets were inadequate to cover the debt.

Judgment in the first suit was for respondent; however, this judgment was later set aside as to appellant Joye. Thereafter, this action was brought and concluded in the trial court below with a verdict for respondent.

Appellant first asserts error by the trial judge in charging the jury that a signature is presumed genuine. Joye claims any presumption had been negated by contrary evidence and, therefore, the charge impermissibly shifted the burden of proof from respondent to appellant.

It is undisputed that a presumption does exist regarding the authenticity of an uncontroverted signature. Section 36-3-307 of the Code of Laws of South Carolina (1976) states: "Unless specifically denied in the pleadings, each signature on an instrument is admitted."

In the present case appellant did deny the signature was genuine, so there was a dispute as to the signature's authenticity. Furthermore, evidence was presented that more than one person had been signing the appellant's name. Thus, the issue turns on the effect of contrary evidence on the presumption set forth in Section 37-3-307.

South Carolina cases prior to the enactment of the Uniform Commercial Code and the Uniform Commercial Code as enacted in South Carolina clearly hold that once the authenticity of a signature is placed in issue, the burden of proof as to the genuineness of the signature is on the party claiming under the signature. *Citizens Bank of Darlington v. Mc-Donald*, 202 S. C. 244, 24 S. E. (2d) 369 (1943); S. C. Code Ann. § 36-3-307 (1976). Other jurisdictions are in accord. *Freeman Check Cashing, Inc. v. State*, 97 Misc. (2d) 819, 412 N. Y. S. (2d) 963 (1979); *McCusker v. Fascione*, 117 R. I. 478, 368 A. (2d) 1220 (1977); *General Products Co., Inc. v. Bezzini*, 33 Conn. Supp. 654, 365 A. (2d) 843 (1976). Contrary evidence dispels the presumption and the claimant must meet his full burden of proof. *Freeman, supra.*

In *Freeman,* the Court of Claims of New York, construing Uniform Commercial Code sections identical to those at issue in the present case, stated:

The effect of this definition is to create a rebuttable presumption: the adversary possesses the burden of coming forward to overcome it, but once this occurs, the presumption disappears. 97 Misc. (2d) at 820, 412 N. Y. S. (2d) at 964.

We agree with the interpretation set forth by the New York court and hold the trial judge did err in charging the presumption to the jury.

Any error, however, was clearly harmless. In his charge, the trial judge repeatedly stated the burden of proving the genuineness of the signature was on respondent. A trial judge may cure an erroneous charge regarding a presumption by clearly stating the burden of the party who would otherwise benefit from the erroneous charge. *See Marks v. I. M. Pearlstine & Sons*, 203 S. C. 318, 26 S. E. (2d) 835 (1943); *Dodenhoff v. Nilson Motor Express Lines*, 190 S. C. 60, 2 S. E. (2d) 56 (1939). Where an erroneous instruction is found to be clearly harmless, a new trial is not required.

Appellant next asserts that it was error for the trial court to admit testimony and evidence regarding the note at issue and previous notes and documents allegedly signed by appellant. Joye's principal contention is that these documents were not sufficiently authenticated. We disagree.

During the course of the trial below, several documents and copies of documents were admitted. The original note at issue disappeared after the earlier foreclosure hearing. Upon testimony of officials from the office of the Darlington County Clerk of Court, a xerox copy of the face of the note was admitted. This was properly within the trial judge's discretion. *Vaught v. Nationwide Mutual Ins. Co.*, 250 S. C. 65, 156 S. E. (2d) 627 (1969).

Appellant contends no one witnessed his signing any of the documents admitted; therefore, proper authentication was lacking. Such proof is unnecessary. There was ample evidence to submit the issue to the jury.

The undisputed testimony is that Pee Dee officials instructed appellant's son to deliver the note to his father. Suspicious of some earlier signatures, respondent specifically instructed the younger Joye to have appellant sign the note personally. It was delivered, though no one admitted that appellant signed or endorsed the note.

Also, a handwriting expert examined all of the signatures and concluded several were the signatures of appellant based on an exemplar witnessed by a Pee Dee official.

Furthermore, Billy Ham, a Pee Dee employee, did a handwriting comparison. A layman who examines signatures as a part of his employment can make such a comparison. *Benedict, Hall & Co. v. Flanagan*, 18 S. C. 506 (1881). Mr. Ham testified he dealt with hundreds of signatures each year. This testimony was properly admitted.

Also, testimony revealed appellant was a thirty percent shareholder and president of Pee Dee Fuel & Fertilizer and respondent would not have made the loans but for appellant's endorsement. He was the only officer and shareholder financially responsible. It is apparent that Joye was the sole financial support of the business.

No requirement exists that a signature be witnessed in order to authenticate a document. There is, however, a requirement that an exemplar be so authenticated. The genuineness of a signature may be established by testimony of one who witnessed the signature where the signature is to be used as a basis of comparison. *State v. Lyle*, 125 S. C. 406, 118 S. E. 803 (1923).

The exemplar used below was an acknowledgment at the bottom of a letter from respondent. Appellant refused postal delivery of the letter. Billy Ham then delivered it personally. Appellant signed the letter in Mr. Ham's presence. This authenticated signature was a proper exemplar for later comparisons at trial.

Were this Court to adopt appellant's view that signatures must be personally witnessed to be proven, financial institutions would have great difficulty protecting their interests. In any dispute concerning a transaction, a person who witnessed the signature would have to be produced, even years after the disputed event. In today's transient society, this would be an impossible burden. Furthermore, such a rule would cause customer inconvenience because one could never deal with a financial institution by mail or through an intermediary. Each customer would have to transact all business personally.

The crux of this case was whether the appellant endorsed the note. This factual dispute was properly submitted to the jury which resolved the issue in favor of respondent. A jury's factual findings will not be disturbed

on appeal unless there is no evidence reasonably supporting those findings. *Townes Assoc., Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). Ample evidence, both direct and circumstantial, support the jury's conclusion.

Appellant's remaining exceptions are without merit; therefore, they are affirmed under Rule 23.

Affirmed.

LITTLEJOHN, C. J., and JOHN GRIMBALL, Acting Associate Justice, concur.

HARWELL, A. J., not participating.

NESS, Justice, dissenting:

I disagree and dissent.

I would hold the trial judge erred in submitting conflicting instructions to the jury on the genuineness of a signature as once evidence is introduced denying the signature or where the signature is put in issue, there is no presumption. The charge of the trial judge improperly shifted the burden of proof as to the alleged signatures of the appellant. The trial judge also improperly attempted to correct his charge by the use of comparable signatures to prove a signature in issue when he stated that it would be taken in connection with the presumptions he had previously stated. We held in *Thigpen v. Thigpen,* 217 S. C. 322, 332, 60 S. E. (2d) 621, 626 (1950):

> [T]he giving of conflicting instructions ordinarily constitutes reversible error because it is impossible for the jury to decide which should be accepted, and after the verdict of the jury, it is equally impossible for the Court to determine which the jury followed and which they ignored.

I would also hold the trial judge erred in failing to grant the motion for a directed verdict as there was no testimony as to the endorsement except for the presumption. We held in *Citizens Bank of Darlington v. McDonald, et al.,* 202 S. C. 244, 24 S. E. (2d) 369 (1943) that once the signature on the note is put in issue, the burden of proof falls clearly on the respondent to establish the execution of the note and that the appellant *personally* endorsed it. See 11 C. J. S., Bills & Notes,

§ 659(B), page 92; 12 Am. Jur. (2d), Lot & Destroyed Instruments, § 158.

The majority relies upon the testimony of Billy Ham, a Pee Dee employee who did a handwriting comparison. The majority fails to consider that Ham could not identify the endorsement on the note. He only identified the signature given in the corporate capacity. This would not serve as the basis for any liability of the appellant in his individual capacity.

I would reverse and enter judgment for the appellant.

Reversed.